# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3278

_____

United States of America,           *
                                         *

          Appellee,            *

                                         *   Appeal from the United States
     v.                        *   District Court for the
                                         *   Eastern District of Missouri.

Carlos Whitehead,               *
                                         *

          Appellant.          *

_____

Submitted: February 12, 2007
Filed:  June 1, 2007

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Carlos Whitehead was convicted by a jury of manufacturing and possessing cocaine base with intent to distribute, a felony in violation of 21 U.S.C. § 841(a)(1); and possession of heroin, cocaine, and marijuana, misdemeanor violations of 21 U.S.C. § 841(a).  The district court[1] sentenced Whitehead to a mandatory minimum of life imprisonment for the felony and concurrent three-year sentences on each of the misdemeanors.  Whitehead appeals from his sentence and conviction.  We affirm.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

## I. Background

Officers of the St. Louis Police Department, including Detective John Applegate, entered a second floor apartment at 4220 Ellenwood with a search warrant at the culmination of a narcotics investigation of the residence. They encountered Whitehead standing in a hallway. As Whitehead expressed surprise over the officers' presence, the kitchen microwave "dinged." In the microwave, officers found a glass vial containing a damp off-white substance that Applegate believed to be crack cocaine. Next to the appliance was a small baggie of powder cocaine, seven chunks of loose crack cocaine, and one chunk of crack cocaine wrapped in clear plastic. Applegate also noticed and seized a metal spoon and knife on the kitchen counter, as well as a box of sandwich bags and a coffee grinder – items commonly used in narcotics manufacturing and distribution. In the bedroom, the officers found heroin and marijuana, as well as a digital scale, white residue, and a plastic bag of marijuana. When asked to whom the drugs belonged, Whitehead said, "You know you got me, so don't play."

Joseph Crow, a supervisor of the Drug Chemistry Section of the St. Louis Metropolitan Police Department's Laboratory Division tested the substances seized from the apartment and concluded that the total weight of all crack cocaine seized was 52.06 grams.[2] Additionally, he identified .91 grams of powder cocaine (cocaine hydrochloride), 17.31 grams of marijuana, and 2.71 grams of heroin.

 Upon Whitehead's conviction for manufacturing with intent to distribute and possessing more than 50 grams of crack cocaine, the district court imposed a mandatory life imprisonment enhancement pursuant to 21 U.S.C. § 841 because

---

[2]Crow analyzed the damp substance removed from the microwave and concluded that it was cocaine base (also known as crack cocaine). The cocaine in the microwave amounted to 45.03 grams of the 52.06 gram total. During the time it was held as evidence, the damp cocaine dried into a single large chunk.

Whitehead had previously been convicted of five felony drug offenses. Whitehead appeals, arguing that (1) the mandatory minimum life sentence imposed constitutes cruel and unusual punishment, (2) the district court erroneously applied the enhanced sentence without a jury finding that the government had proved the existence of prior convictions beyond a reasonable doubt, (3) the enhancement was not justified because the government had not demonstrated that more than 50 grams of the cocaine was crack cocaine, and (4) the district court abused its discretion when it denied Whitehead's motion for a continuance to retain new counsel. Whitehead also insisted that his counsel present an additional list of issues in his reply brief.

## II. Analysis

### A.

Whitehead urges us to apply the proportionality review established in Solem v. Helm, 463 U.S. 277, 290-92 (1983), and Harmelin v. Michigan, 501 U.S. 957 (1991), and find the mandatory life sentence imposed under 21 U.S.C. § 841(b)(1)(A)(iii) cruel and unusual punishment in violation of the Eighth Amendment. An Eighth Amendment violation may be found only "'in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" See Henderson v. Norris, 258 F.3d 706, 712 (8th Cir. 2001) (quoting Harmelin, 501 U.S. at 1005 (opinion of Kennedy, J.)); see also Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (noting that the "gross disproportionality principle . . . [is] applicable only in . . . 'exceedingly rare' and 'extreme' case[s]." (citation omitted)). This is not such a case. Because Whitehead had been convicted of five prior felony drug offenses, see Rummel v. Estelle, 445 U.S. 263, 276, 284-85 (1980) (holding that recidivism may support the imposition of a severe penalty), and because cocaine distribution represents a grave threat to society, United States v. Johnson, 944 F.2d 396, 408-09 (8th Cir. 1991), we do not consider his sentence grossly disproportionate to the crime. See, e.g., United States v. Collins, 340 F.3d

672, 679-80 (8th Cir. 2003) (upholding a life sentence for possession with intent to distribute more than 500 grams of methamphetamine when defendant had been convicted of two prior drug felonies). Accordingly, the sentence does not constitute cruel and unusual punishment.[3]

B.

We find similarly unavailing the contention that the district court violated Whitehead's Sixth Amendment right to a jury trial by imposing an enhanced sentence based on his prior convictions without proving to a jury factual issues related to his criminal record. Evidence of a prior conviction need not be submitted to the jury for the enhancement to apply. Collins, 340 F.3d at 679 (responding to an identical argument).

C.

The district court did not abuse its discretion by denying Whitehead's request for a continuance to obtain new counsel. The right to choice of counsel is not absolute and is "circumscribed in several important respects." United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006) (citation omitted). Whitehead acknowledges not only that the trial court has broad discretion to grant or deny a continuance for the purpose of retaining new counsel, but also that the district court's discretion is at its zenith when the issue is raised close to the trial date. See United States v. Vallery,

---

[3]Our conclusion is consistent with our prior observation that "Section 841 and its mandatory minimum sentencing provisions have consistently withstood constitutional scrutiny." United States v. Regenos, 54 Fed. Appx. 245, 245 (8th Cir. 2002) (unpublished per curiam) (collecting cases); see also United States v. Jones, 965 F.2d 1507, 1517-18 (8th Cir. 1992) (holding that a life sentence pursuant to § 841(b)(1)(A)(iii) was not a cruel and unusual punishment); United States v. Johnson, 944 F.2d 396, 408-09 (8th Cir. 1991).

108 F.3d 155, 157 (8th Cir. 1997). Here, Whitehead moved for a continuance to retain new counsel on the very morning of trial. The district court reasoned that denial of the motion was justified because Whitehead had had ample time to retain a new attorney, a jury was ready, Whitehead had already changed his counsel once, an additional continuance would be prejudicial to the government, and five continuances had already been granted to Whitehead, which cumulatively amounted to a delay of over two years. In light of these considerations, the district court did not abuse its discretion by denying Whitehead's motion. See, e.g., United States v. Armstrong, 112 F.3d 342, 344-45 (8th Cir. 1997) (denying an eleventh-hour request for new counsel and continuance); Vallery, 108 F.3d at 157-58; Urquhart v. Lockhart, 726 F.2d 1316, 1319 (8th Cir. 1984).

D.

We review for clear error a district court's identification of a controlled substance at sentencing. Garrett v. United States, 211 F.3d 1075, 1076 (8th Cir. 2000) (per curiam). We will reverse only if "left with a definite and firm conviction that a mistake has been made." Id. (quoting United States v. Brown, 156 F.3d 813, 816 (8th Cir. 1998)). The Sentencing Guidelines define crack cocaine as "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c), Note D (2006). Whitehead argues that the government failed to prove that the substance retrieved from the apartment that weighed in excess of 50 grams was crack cocaine because it had not been tested for the presence of sodium bicarbonate. This argument is unavailing. We have previously held that the government need not show the presence of sodium bicarbonate in order to prove that cocaine is crack. United States v. Stewart, 122 F.3d 625, 628 (8th Cir. 1997) (observing that the language of the Sentencing Guidelines definition does not require evidence of sodium bicarbonate or cocaine hydrochloride); see also Brown, 156 F.3d at 816.

Additionally, "[i]t is well established that 'the identity of a controlled substance can . . . be proved by circumstantial evidence and opinion testimony.'" United States v. Covington, 133 F.3d 639, 644 (8th Cir. 1998) (alteration in original) (quoting United States v. Williams, 982 F.2d 1209, 1212 (8th Cir. 1992)). Here, Applegate testified that he believed the substance was crack cocaine. DEA Special Agent James McHugh, an individual who had been involved in more than 250 drug distribution or manufacturing investigations, testified that he had examined the cocaine and that it appeared to be crack cocaine. He also stated that crack cocaine can be prepared in a microwave. Although the cocaine removed from the microwave was still damp and may not have been in chunks at the time it was weighed, McHugh testified that properly cooked crack cocaine takes on its characteristic rock-like form when allowed to dry out. Crow observed that the cocaine had taken on a rock-like form after drying in an evidentiary envelope. Crow had also determined that the cocaine identified as crack was not cocaine hydrochloride (cocaine powder) and testified that there were more than 50 grams of crack cocaine. Accordingly, the district court's determination was not clearly erroneous.

E.

Although we do not normally consider issues raised for the first time in a reply brief, the government has raised no objection to our addressing them. Having considered these newly raised arguments, we conclude that they are without merit.

The judgment is affirmed.

_____