# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-3594

_____

United States of America,     *
                                      *

          Appellee,     *
                                        *

   v.     *
                                        *

Alberto Chahia,     *
also known as Chingone,     *
                                        *

          Appellant.     *


_____

No. 07-3595

_____

Appeals from the United States
District Court for the
District of North Dakota.

United States of America,     *
                                      *

          Appellee,     *
                                        *

   v.     *
                                        *

Kelly Dean Overby,     *
                                        *

          Appellant.     *


_____

Submitted: June 10, 2008
Filed: October 14, 2008

_____

Before MURPHY, BYE and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Alberto Chahia and Kelly Dean Overby were tried together and both were convicted by a jury of conspiracy to possess with intent to distribute and distribute 500 grams or more of a substance containing a detectable amount of methamphetamine.  See 21 U.S.C. §§ 841(a)(1), 846.  Chahia was also convicted of possession with intent to distribute a controlled substance.  See 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1).  The district court[1] sentenced both Overby and Chahia to life imprisonment.

In this appeal, Chahia asserts that there is insufficient evidence to support the jury's verdict; the district court abused its discretion in denying his motion for continuance; the district court erred in allowing hearsay testimony; and, his life sentence constitutes unconstitutional cruel and unusual punishment. Overby contends that he was denied a speedy trial in violation of the Sixth Amendment and that the district court erred in admitting handwritten notes he authored while in pretrial detention.  We affirm.

I.

A.

Chahia first asserts that the evidence was insufficient to permit a reasonable jury to convict him of the offense of conspiracy to possess with intent to distribute and

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

> We review *de novo* whether the evidence presented at trial was sufficient to support the verdict, viewing the evidence in the light most favorable to the verdict and giving it the benefit of all reasonable inferences. We do not weigh the evidence or assess witness credibility, and we reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.

United States v. Pruneda, 518 F. 3d 597, 605 (8th Cir. 2008) (internal citation omitted). "To establish a conspiracy, the government must prove beyond a reasonable doubt that (1) there was an agreement to achieve an illegal purpose, (2) that the defendant knew of the agreement, and (3) that the defendant knowingly participated in the conspiracy." United States v. McAdory, 501 F.3d 868, 871 (8th Cir. 2007).

The first count of the second superceding indictment charged Chahia, Overby, Rene Enrique Zenderas, Ruben Aaron Nieto, Jr., Timothy Charles Horn, Kellen Conlon Strutz, Rendell Rae Klein, Landon Wang, and Daniel Edward Smeltzer with conspiring to possess with intent to distribute and distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine from on or about January 1, 2006, to March 21, 2007, the date of the second superceding indictment.[2] It further alleges that the following overt acts were committed by one or more of the conspirators in furtherance of the conspiracy: the possession of such substance, with the requisite intent, within the states of North Dakota, Minnesota, California, and elsewhere; the use of telecommunications facilities; the transfer and the arranging of the transfer of methamphetamine from California and elsewhere to the Red River Valley for distribution; and, the use and threatened use of violence.

---

[2]Each of the seven co-defendants entered guilty pleas before or during Chahia and Overby's trial, and several testified for the United States.

Chahia concedes that a conspiracy for the distribution of methamphetamine in the Fargo, North Dakota, area existed between Zendejas, Horn, Nieto, and others, but Chahia denies that he was a member of the conspiracy. Chahia also contends that this conspiracy ended on September 21, 2006, when Horn and Zendejas were arrested. Chahia relies upon the testimony of Horn and Zendejas. Horn testified that he received methamphetamine in North Dakota that had been shipped from California by Zendejas. Horn further testified that he did not know the identities of those persons transporting the substance. Zendejas testified that he sent Nieto from California to North Dakota with methamphetamine and that, though Chahia traveled with Nieto, Chahia only went along for the ride and had no knowledge that illegal drugs were being transported. Chahia further contends that he "began a conspiracy to sell methamphetamine with Mr. Nieto after the arrest of Tim Horn and Rene Zendejas," which "was a wholly separate operation from Zendejas'[s] and Horn's conspiracy." Appellant Chahia's Brief at 21. Our review of the record convinces us that Chahia significantly minimizes his role in the overall drug transport conspiracy.

The testimony of law enforcement officers, Overby, and Chahia's other co-defendants described the conspiracy as beginning in the summer of 2006 when Zendejas, in California, began supplying methamphetamine to Horn and Strutz, in North Dakota. According to Zendejas's testimony, he shipped approximately 12 pounds of methamphetamine from California to North Dakota. Horn and Strutz, in turn, distributed the methamphetamine to others, including Overby. The drug was routinely concealed inside the lining of round water coolers and transported by motor vehicle along with mustard used to "mask" the presence of the methamphetamine. Chahia knew that Zendejas was sending drugs to North Dakota, and Chahia himself received methamphetamine from Zendejas for distribution and personal use. Later in the summer of 2006, Chahia and Nieto transported methamphetamine from California to North Dakota via Idaho for the sum of $2,000 each, with the substance again concealed in a water cooler.

Tim Horn's brother, Jason Horn, initially participated in the conspiracy by allowing water coolers containing between one and one and a half pounds of methamphetamine to be stored in his apartment. In August 2006, Jason Horn began receiving one-ounce quantities of methamphetamine from Zendejas via Tim Horn. After the arrests of Tim Horn and Zendejas, Chahia continued to use water coolers to ship methamphetamine from California to Jason Horn and Strutz in North Dakota. Chahia personally delivered at least four pounds of methamphetamine to Fargo.

Finally, in November 2006, law enforcement, acting on a tip from Strutz, placed Chahia under surveillance at a casino in Mahnomen, Minnesota, where Chahia was occupying a hotel room. Chahia was observed leaving the hotel room with Nieto. Nieto was carrying two water coolers which he placed in the trunk of a vehicle. As Chahia and Nieto were entering the vehicle, they were detained by officers. Nieto was found to be in possession of 99.1 grams of methamphetamine, while Chahia had approximately 218 grams of the substance on his person. Inside the coolers, law enforcement found 57.7 grams of methamphetamine wrapped in tape and $15,500 in cash. They also found duct tape, an unopened bottle of mustard, and a third cooler in the hotel room. The methamphetamine and paraphernalia seized by law enforcement officers was introduced into evidence at Chahia's and Overby's trial.

"Whether a given case involves single or multiple conspiracies depends on whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy." United States v. Radtke, 415 F.3d 826, 838 (8th Cir. 2005) (internal quotations omitted). "That the conspirators entered the conspiracy at different times and played discrete roles does not compel a finding of multiple conspiracies." United States v. Santisteban, 501 F.3d 873, 881 (8th Cir. 2007). The evidence presented at trial established that Chahia played a significant part in a single, expansive conspiracy to transport methamphetamine in as large as pound quantities from California to the Fargo, North Dakota, area where it was distributed. Although Zendejas and Nieto were arrested, the conspiracy continued, involving Chahia and

some of the same individuals and methods as well as the identical objective. Accordingly, we conclude that the jury's verdict is supported by the evidence.

B.

Chahia also contends that the district court abused its discretion in denying his motion for continuance. After the filing of a superceding indictment, the trial of Chahia, Overby, and their co-defendants was set for June 18, 2007. On June 7, 2007, Chahia filed a motion to continue, citing the government's delivery: (1) on May 31, 2007, of a disk containing "4,569 discovery documents"[3] as well as "7.68 hours of audio material" and (2) on June 1, 2007, of "an additional 19 CD's." At a status conference conducted on June 11, 2007, the district court denied the motion to continue and an order to that effect was entered on June 13, 2007. On June 13, 2007, Chahia filed a second motion for continuance based upon the revelation that co-defendant Zendejas was about to change his plea and testify against Chahia. On that same date, the district court denied the motion as premature, noting that the court had not been provided with any indication of the content of Zendejas's potential testimony; whether such testimony would be a surprise to Chahia; or "what remedial steps counsel seeks to take before trial commences."

In the days prior to the trial, the United States delivered to Chahia's counsel a transcript and audio tape of Zendejas's statement. On the first day of trial, Chahia's attorney acknowledged that he had finished reading the transcript. Finally, prior to opening statements, the district court stated that, if after the trial commenced, "the defendant believes or either of the defendants believe that they need a little extra time, you know, to take some of these issues, I'm not adverse to breaking early some day

---

[3]According to the United States, the disk actually contained documents numbered 3,472 through 4,569 totaling 1,098 pages of material, including photographs, telephone toll reports, subpoenas, and other records; 53 pages of interviews; and 144 pages of lab reports, evidence inventories, and other documents.

or coming in late some morning and giving you a few hours to prepare." On the fourth day of trial, Zendejas testified describing the conspiracy, including Chahia's participation in it.

Chahia contends that he was prepared for trial until the "late arrival of the new discovery." He asserts that there was not enough time for him to review the audio recordings with his attorney or for Chahia's attorney to adequately investigate the testimony disclosed in the "late" discovery, rendering him unable to rebut such testimony or impeach government witnesses. He contends that the prejudice which he suffered was particularly acute with respect to the possession with intent to distribute methamphetamine count. Specifically, Chahia alleges that additional time would have allowed him to fully appreciate the strength of the government's case which would have motivated him to enter a guilty plea and "possibly avoid the life sentence."

"In general, we disfavor requests for continuance and recognize that '[d]istrict courts are afforded broad discretion when ruling on requests for continuances.'" United States v. Moe, 536 F.3d 825, 831 (8th Cir. 2008) (quoting United States v. Vesey, 330 F.3d 1070, 1072 (8th Cir. 2003)). Further, a "district court's discretion is at its zenith when the issue [of a continuance] is raised close to the trial date." United States v. Whitehead, 487 F.3d 1068, 1071 (8th Cir.), cert. denied, 128 S. Ct. 693 (2007). "We will reverse a district court's denial of a continuance only if the court abused its discretion *and* the moving party was prejudiced as a result." United States v. Wilcox, 487 F.3d 1163, 1172 (8th Cir. 2007) (emphasis added). Neither occurred here.

First, the district court did not abuse its discretion in denying Chahia's motions for continuance. The United States provided the first set of discovery documents 13 days before trial. Chahia has not shown which of those documents, if any, were subject to pretrial disclosure or relevant to his defense. Further, Chahia has not

explained how the "late" disclosure hampered his defense. As to the Zendejas transcript, Chahia's attorney acknowledged to the district court, as the trial began, that counsel had read the transcript and he did not accept the district court's offer of an opportunity during the trial for an extended recess in order to further review the provided materials.

Second, Chahia was not prejudiced by the district court's denial of his motions to continue. The prejudice alleged by Chahia is that the:

> Testimony and evidence admitted after the testimony of Jason Horn, especially the evidence presented against Chahia that was gathered in Minnesota at the casino where he was arrested, was strong. Mr. Chahia could have avoided this evidence if he decided to plead out after weighing that late coming discovery. But, the lateness of the discovery prevented him from obtaining a reasonable amount of time to consider that evidence and negotiate to plead out instead going forth to facing both counts at trial.

Appellant Chahia's Brief at 14. That Chahia might have elected to waive a jury trial and plead guilty if he had fully appreciated the evidence against him is speculative and, thus, insufficient to demonstrate prejudice. See United States v. Howard, 540 F.3d 905, 906-07 (8th Cir. 2008) (determining that the district court did not err in denying the defendant's motion for continuance because "[s]peculation is inadequate to establish prejudice"); United States v. Hoenig, 79 F. App'x 8, 9 (5th Cir. 2003) (unpublished per curiam) (finding that the defendant had failed to demonstrate "serious prejudice as the result of the denial of his motion for continuance" where he "only argue[d] that, had he been given a continuance, he 'most likely' would not have decided to argue that he did not have possession of the gun or that he was entrapped, that he 'probably' would not have called his girlfriend as a witness, and that he 'might' have determined that his case was hopeless and pleaded guilty to gain the two-point acceptance-of-responsibility adjustment"). Accordingly, we conclude that

the district court did not abuse its considerable discretion in denying Chahia's motions for continuance.

## C.

Chahia also argues that the district court erred in allowing hearsay testimony to be introduced through Jason Horn. In accordance with United States v. Bell, 573 F.2d 1040 (8th Cir. 1978),[4] the district court conditionally allowed out-of-court statements of various individuals presented through the testimony of Jason Horn and others as coconspirator statements which are not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E). See Fed. R. Evid. 801(d)(2)(E) (providing that a statement is not hearsay if it is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy). At the close of the evidence, the district court ruled that the out-of-court statements were admissible under Rule 801(d)(2)(E). According to Chahia, the requirements of Rule 801(d)(2)(E) were not satisfied because the conspiracy in which he was a participant was separate from the conspiracy alleged in the indictment. Having found that the evidence was sufficient for a reasonable jury to convict Chahia of the conspiracy alleged in the indictment, we reject this claim.

## D.

Chahia's final claim is that his mandatory life sentence imposed under 21 U.S.C. § 841(b)(1)(A) (subjecting defendants with two prior felony drug convictions

---

[4] In United States v. Bell, 573 F.2d 1040 (8th Cir. 1978), this court held that where a witness testifies to an out-of-court declaration of an alleged coconspirator, the court, upon timely objection, may conditionally admit the statement and make an explicit determination at the conclusion of the evidence as to whether the government has carried its burden of proving by a preponderance of the evidence that the statement was made during the course and furtherance of the conspiracy. Id. at 1044.

to a mandatory life sentence) constitutes cruel and unusual punishment in violation of the Eighth Amendment. However, Chahia's constitutional claim is foreclosed by United States v. Whiting, 528 F.3d 595 (8th Cir. 2008) (per curiam). There, this court held that "the mandatory life sentence [imposed pursuant to section 841(b)(1)(A)] did not violate the Eighth Amendment ban on cruel and unusual punishment." Id. at 597; see United States v. Williams, 534 F.3d 980, 985 (8th Cir. 2008) (rejecting defendant's claim that his sentence of life imprisonment violated the Eighth Amendment because "our circuit precedent upholding the constitutionality of life sentences imposed under § 841(b)(1)(A) mandates the affirmance of [the] sentence") (citing Whiting, 528 F.3d at 596-97).

## II.

### A.

Overby asserts that the six and one-half months delay between his indictment on December 6, 2006 and the commencement of his trial on June 18, 2007, violated his Sixth Amendment right to a speedy trial. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. This right "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." United States v. Shepard, 462 F.3d 847, 864 (8th Cir.), cert. denied, 127 S. Ct. 838 (2006). Overby concedes that no Speedy Trial Act[5] violation occurred in this case, and we have stated that "[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." United States v. Titlbach, 339 F.3d. 692, 699 (8th Cir. 2003). Nevertheless,

_____

[5]18 U.S.C. § 3161.

-10-

> The Supreme Court has identified four relevant inquiries in a claim involving the Sixth Amendment right to a speedy trial: (1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay.

United States v. Aldaco, 477 F.3d 1008, 1018 (8th Cir. 2007) (citing Doggett v. United States, 505 U.S. 647, 651 (1992)).

With respect to the first factor, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." United States v. DeGarmo, 450 F.3d 360, 364-65 (8th Cir.), cert. denied, 127 S. Ct. 516 (2006) (quoting Doggett, 505 U.S. at 651-52). If such a showing is made, we will "consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 365 (quoting Doggett, 505 U.S. at 652). However, if the length of the delay is not "presumptively prejudicial," we need not examine the other criteria. Barker v. Wingo, 407 U.S. 514, 530-31 (1972); accord United States v. Jeanetta, 533 F.3d 651, 656 (8th Cir. 2008). How much time may pass before the delay is considered presumptively prejudicial depends on the circumstances of the case. Barker, 407 U.S. at 530-31.

Significantly, this conspiracy case involved nine co-defendants. The last defendants were added by a second superceding indictment filed on March 21, 2007. In its subsequent order continuing the joint trial of these defendants, the district court noted that the second superseding indictment adding additional defendants was only recently filed; that not all of the defendants had appeared; that the charges against the defendants "arise from the same facts and circumstances"; and that "[g]enerally, people jointly indicted together on similar evidence from the same or [a] related event should be tried together." See United States v. Ruiz, 446 F.3d 762, 772 (8th Cir.

-11-

2006) (generally persons charged in a conspiracy should be tried together), <u>cert. denied</u>, 127 S. Ct. 537 (2006), <u>and</u> 127 S. Ct. 1027 (2007). The court also noted the large amount of discovery including "thousands of pages of written discovery . . . many hours of audio recordings . . . and several hundred photographs." The district court also observed that "[r]ecent plea agreements . . . will likely result in the production of even more discovery."

Under the circumstances of this case, the six and one-half month delay between Overby's indictment and his trial is too short a time period to be presumptively prejudicial. <u>See</u> <u>United States v. Lozano</u>, 413 F.3d 879, 883 (8th Cir. 2005) (a delay of "slightly less than seven months" is not presumptively prejudicial); <u>Titlbach</u>, 339 F.3d at 699-700 (eight-month delay found not presumptively prejudicial); <u>United States v. McFarland</u>, 116 F.3d 316, 318 (8th Cir. 1997) ("a little over seven months" was "too brief a delay to trigger review of [a defendant's] Sixth Amendment speedy trial claim"); <u>cf. Titlbach</u>, 339 F.3d at 699 ("[A] delay approaching a year may meet the threshold for presumptively prejudicial delay . . . ."). Accordingly, we need not consider the remaining factors to find that no Sixth Amendment speedy trial violation occurred.

B.

Overby asserts that the district court's admission into evidence of notes Overby authored violated his Sixth Amendment right to counsel. Overby wrote the notes and passed them to unindicted coconspirator, Tim Gray, while both were pretrial detainees in the Stutsman County Correctional Center in January and February 2007. In a pretrial motion, Overby asserted that the notes were inadmissible under: (1) Federal Rule of Evidence 401[6] as they were written after the alleged conspiracy had ended and

---

[6]"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

thus were not relevant and (2) Federal Rule of Evidence 403[7] because, even if the notes were relevant, they were of little probative value and potentially confusing and misleading to the jury. The motion was argued and denied on the first day of trial. Gray testified at trial, and the notes were introduced through him. Overby now contends for the first time on appeal that the admission of the notes violated his Sixth Amendment right to counsel. Because this objection was not presented to the district court, we review the admission of the notes for plain error. See United States v. Abdullahi, 520 F.3d 890, 896 (8th Cir. 2008) (stating that issues not raised in the district court are reviewed for plain error).

In Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court determined that the Sixth Amendment rights of a defendant were violated "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Id. at 206. Here, Gray received notes from Overby while both were pretrial detainees. Gray conceded that Overby intended his notes to Gray to remain confidential and that at least some of Overby's notes were in response to notes from Gray. Further, a January 30, 2007, letter from an Assistant United States Attorney to Gray's attorney proposed cooperation by Gray and raised the possibility that Gray could be a witness for the United States in order to avoid prosecution.

However, "[a]n informant becomes a government agent for purposes of [Massiah] only when the informant has been instructed by the police to get information about the particular defendant." Moore v. United States, 178 F.3d 994, 999 (8th Cir. 1999) (quoting United States v. Birbal, 13 F.3d 342, 346 (2d Cir. 1997)). In Moore, this court found that:

---

[7]"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

To the extent there was agreement between Hartwig and the government, there is no evidence to suggest it had anything to do with Moore. The proffer agreement simply evidenced Hartwig's willingness to disclose his knowledge of drug activity in hopes of receiving a more favorable plea agreement. Even if we were to accept Hartwig's view that the proffer applied to his knowledge of any illegal activity, there is still no evidence that Hartwig was directed to procure additional information from Moore, or anybody else. As the District Court correctly pointed out, the fact that Hartwig had recently signed a proffer agreement with the government seems to be an unrelated and fortuitous event. We find that the link between Hartwig's relationship with the government and his conduct at issue here is insufficient for his actions to be attributable to the government for purposes of a *Massiah* violation.

Id. at 999-1000. Similarly, here the record contains no evidence that the United States "deliberately elicited" the notes from Overby through Gray. See Massiah, 377 U.S. at 206. Therefore, while Gray may have indeed acted in order to curry favor with the government with respect to an ongoing investigation in which he was targeted, his communication with Overby cannot be attributed to the United States for Massiah purposes. See Massiah, 377 U.S. at 206; Moore, 178 F.3d at 999-1000. As such, Overby has not shown a Massiah violation.

## III.

Accordingly, we affirm the judgments of the district court.

_____