# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2618
_____

United States of America

*Plaintiff - Appellee*

v.

Juan Daniel Lugo

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa – Davenport
_____

Submitted: September 20, 2012
Filed: January 8, 2013
_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.
_____

MELLOY, Circuit Judge.

Juan Daniel Lugo pleaded guilty to conspiring to manufacture, distribute, and possess with intent to distribute, methamphetamine and marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). The district court[1] sentenced him to a prison term

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

of 240 months. Because the district court did not clearly err in determining the identity of the substance for sentencing purposes, we affirm.

I.

On February 17, 2010, a grand jury indicted Lugo and three coconspirators for violating 21 U.S.C. §§ 846 and 841(a)(1). Lugo subsequently pleaded guilty and entered into a plea agreement.[2] The presentence investigation report (PSR) recommended a total offense level of 39. This recommendation was based on a base offense level of 38 for the quantity of drugs, a four-level increase for Lugo's aggravating role as the leader and organizer of the conspiracy, and a three-level reduction for Lugo's acceptance of responsibility.

At his sentencing hearing, Lugo objected to the PSR on several grounds. Relevant to this appeal is Lugo's contention that the district court mischaracterized the methamphetamine as "actual" methamphetamine (or "ice"[3]), as opposed to a mixture containing methamphetamine. The district court, acknowledging the often difficult task of determining drug quantity, reduced Lugo's base offense level from 38 to 36. The court stated:

> The process of determining drug quantity is always – always difficult because memories often fade, there is difficulty in recalling exactly when the change was made from methamphetamine mixture to ice, all those kinds of issues.

---

[2]As part of Lugo's plea agreement, the government agreed to dismiss two additional counts of the indictment relating to the distribution of drugs.

[3]The U.S. Sentencing Commission Guidelines Manual ("Sentencing Guidelines") defines "ice" as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c) n.(C).

Here the ice alone easily gets him to a level 36. . . . [I]t would take 19 or 20 ounces of ice just to get to a level 36. It would take probably 60 ounces of ice alone to get to a level 38. This is the most conservative estimate I've ever made, but I am going to find a level 36 and I can justify that very easily based on the ice alone, not to mention the marijuana or the other methamphetamine without attributing the 17 ounces to Mr. Lugo.

The district court denied Lugo's other objections to the PSR[4] and, based on the adjusted total offense level of 37 (including the same four-level increase and three-level reduction, respectively), sentenced Lugo to 240 months' imprisonment.[5]

Lugo subsequently appealed his 240-month sentence, arguing that the district court clearly erred in finding that the drug involved in the conspiracy was "ice" and not a mixture containing methamphetamine. Specifically, Lugo contends that the government failed to meet its burden with respect to proving the purity of the methamphetamine because it did not conduct any testing on the seized substances. The government, however, claims that the Sentencing Guidelines do not require that purity be proved with "absolutely certainty," and that "direct evidence of the visual characteristics of a drug," as well as circumstantial evidence and expert testimony, are all that is required for proof.

This Court submitted Lugo's case without argument on March 12, 2012, but subsequently vacated that submission on April 24 and ordered supplemental briefing on three issues: (1) "whether it is clear error for the district court to sentence on the basis of 'ice' methamphetamine despite the government's failure to test whether the

---

[4]Lugo also objected to the PSR on the grounds that (1) the quantity of drugs was overstated, (2) he did not play an aggravating role in the offense, and (3) his criminal history category was computed incorrectly.

[5]The advisory sentencing range based on Lugo's offense level and criminal history category is 235–293 months' imprisonment.

-3-

seized methamphetamine is in fact 'a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity'"; (2) "whether the analysis may be different depending on whether there was an actual seizure of methamphetamine"; and (3) whether United States v. Stewart, 122 F.3d 625, 628 (8th Cir. 1997), and United States v. Whitehead, 487 F.3d 1068, 1072 (8th Cir. 2007), control this issue. We then heard oral arguments from the parties regarding Lugo's appeal and the issues listed above. We now affirm.

II.

A.

The government, for sentencing purposes, bears the burden to prove drug type by a preponderance of the evidence. United States v. Thompson, 335 F.3d 782, 784 (8th Cir. 2003). We review a sentencing court's determination of drug type for clear error, and "will reverse only if firmly convinced [that] a mistake has been made." Id. (citing United States v. Maxwell, 25 F.3d 1389, 1397 (8th Cir. 1994)). Where only "a small portion of the methamphetamine recovered during [an] investigation" is tested for purity, "the testing evidence combined with the testimony of witnesses who actively participated in the drug conspiracy [can] amply support[]" a sentencing court's conclusion as to drug type for a quantity of drugs greater than the amount seized. United States v. Fairchild, 189 F.3d 769, 778 (8th Cir. 1999). "When no quantity has been recovered, the government may prove the purity of quantities attributed to the defendant by circumstantial evidence, for example, a conspirator's reliable testimony . . . or an expert's testimony as to the normal purity of methamphetamine produced in a lab." United States v. Houston, 338 F.3d 876, 879 (8th Cir. 2003) (citations omitted). In relying on witness testimony as evidence of purity, "[t]he finder of fact may accept the parts of a witness's testimony that it finds credible while rejecting any portion it finds implausible or unreliable," United States v. Boyce, 564 F.3d 911, 916 (8th Cir. 2009), and such "[f]indings about the

credibility of witnesses are 'virtually unreviewable on appeal,'" id. (quoting United States v. Gomez-Perez, 452 F.3d 739, 743 (8th Cir. 2006)).

## B.

Several of our prior decisions are instructive on whether it was clear error for the district court to find, absent testing for purity, that the methamphetamine was properly categorized as "ice." In Stewart, the defendant argued that there was not sufficient evidence to prove that the cocaine that he sold was "crack" cocaine.[6] 122 F.3d at 628. Specifically, the defendant argued that there must be evidence that the substance contained cocaine hydrochloride and sodium bicarbonate. Id. We rejected that argument because "the Sentencing Guidelines only state that crack cocaine is '*usually* prepared by processing cocaine hydrochloride and sodium bicarbonate.'" Id. (emphasis added) (quoting U.S.S.G. § 2D1.1(c) n.D). The Sentencing Guidelines thus "do[] not *require* such evidence before the district court can conclude that a substance is crack cocaine." Id. (emphasis added).

A decade later, in Whitehead, we again considered whether it was clear error for the district court to determine that a substance is "crack" cocaine absent laboratory testing. 487 F.3d at 1072 (citing Stewart, 122 F.3d at 628). In that case, the government presented testimony from an experienced narcotics agent regarding the appearance of the seized substance and the conditions under which he found it. Id. Specifically, the agent testified that he found the substance damp and in a microwave, but that it later dried out and took on a rock-like form. Id. In finding no clear error in the district court's identification of the drug as "crack," we reiterated that "the

---

[6]Under the Sentencing Guidelines, "crack" cocaine carries with it a higher a base offense level per unit mass than cocaine in a powder form. See U.S.S.G. § 2D1.1(c); see also Theus v. United States, 611 F.3d 441, 447 (8th Cir. 2010) ("[A] crack cocaine conviction [will] yield a much higher sentence than a powder cocaine conviction.").

identity of a controlled substance can . . . be proved by circumstantial evidence and opinion testimony." Id. (alteration in original) (quoting United States v. Covington, 133 F.3d 639, 644 (8th Cir. 1998) (internal quotation marks omitted)).

The general principles underlying our decisions in Stewart and Whitehead accord with the decisions of our sister circuits. See, e.g., United States v. Linton, 235 F.3d 328, 329–30 (7th Cir. 2000) (district court's determination of "crack" cocaine supported by "direct evidence of the visual characteristics" of the substance and testimony of veteran narcotics agent and forensic chemist); United States v. Jones, 159 F.3d 969, 981–83 (6th Cir. 1998) (testimony of forensic scientist and experienced narcotics officer, coupled with knowledge of drug preparation, sufficient to satisfy preponderance standard that substance was "crack" cocaine); see also United States v. Verdin-Garcia, 516 F.3d 884, 896 (10th Cir. 2008) ("Narcotics need not be seized or tested to be held against a defendant at sentencing. . . . Laboratory test results are perhaps more persuasive evidence of amounts of purities than eyewitness testimony . . . but [such testimony] is not unreliable as a matter of law.").

C.

1.

Subsequent to the filing of supplemental briefs, we decided United States v. Walker, 688 F.3d 416 (8th Cir. 2012). In Walker, the defendants pleaded guilty to conspiring to distribute methamphetamine, and their coconspirators testified at their sentencing hearing. Id. at 419–20. Specifically, the defendants' coconspirators "consistently identified the methamphetamine . . . as 'ice,'" and "distinguished the 'ice' . . . from the anhydrous methamphetamine . . . based on its appearance, form, price, and quality." Id. at 424. The defendants argued that the district court erred by "crediting the testimony of [their] coconspirators because they did not have chemistry

-6-

backgrounds or understand the definition of 'ice' under the Guidelines." Id. at 425. We rejected this argument:

> That [the defendants] and their coconspirators did not have a scientific or technical understanding of the term "ice" is relevant to the district court's assessment of the reliability of their testimony as to drug identity or purity, but does not necessarily preclude the district court from finding the methamphetamine . . . was "ice."

Id.

In finding no clear error in the district court's identification of the substance as "ice," we noted "the flexible Guidelines approach of allowing the sentencing court broad discretion to consider a wide range of relevant evidence from a variety of sources as long as the evidence 'has sufficient indicia of reliability to support probable accuracy.'" Id. at 423 (quoting United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009)). Such evidence includes the source of the controlled substance, the price generally obtained for the controlled substance, the substance's appearance and form, and users and distributors' reports of the identity and quality of the substance. Id. at 424.

2.

Lugo's case is indistinguishable from Walker, and thus Walker controls our analysis. Here, Lugo's coconspirator testified regarding the physical characteristics and appearance of the methamphetamine involved in the conspiracy. Specifically, the sentencing court heard testimony from Tamera Scheper that the methamphetamine from Lugo was "powdery and rocky and . . . clear" and "white," and that she sold sixty-one ounces (61 oz.) of the substance between July 2008 and January 2009. Scheper also testified that Lugo had referred to the substance as "ice," that she sold

it to her customers as "ice," and that it was "much cleaner" than anhydrous methamphetamine.

We find no clear error in the district court's consideration of, and reliance on, Scheper's testimony to determine that Lugo was dealing in "ice" and not a mixture of substances containing methamphetamine. Scheper's testimony regarding the amount and quality of methamphetamine that she received from Lugo is plainly within the purview of evidence that the district court may consider when making a finding as to the identification of a substance. See Walker, 688 F.3d at 423 (citing with approval United States v. Cockerill, No. 99-4634, 2000 WL 852608, at *2–3 (4th Cir. June 28, 2000) (coconspirator's testimony that the methamphetamine "was of very good quality" is sufficient evidence for a sentencing court to conclude that the substance was not a methamphetamine mixture)); see also Whitehead, 487 F.3d at 1072 ("[T]he identity of a controlled substance . . . can be proved by circumstantial evidence and opinion testimony." (second alteration in original) (quoting United States v. Covington, 133 F.3d 639, 644 (8th Cir. 1998) (internal quotation marks omitted))).

D.

We now address, to the extent that they remain unanswered, the questions for which the parties submitted supplemental briefs. First, as first set forth in Walker and made clear in this opinion, it is not clear error for the district court to sentence on the basis of "ice" methamphetamine despite the government's failure to test the purity of the seized substance. See Walker, 688 F.3d at 425. Second, this analysis remains unchanged even where, as here, there was an actual seizure of methamphetamine. This Court in Walker, while recognizing the value of chemical testing, see id. n.4, stated that "[t]he Guidelines do not *require* the government to establish the identity, quantity, or purity of methamphetamine by laboratory analysis," id. at 423 (emphasis added). See also id. ("[T]he Guidelines do not specify what evidence is required to establish methamphetamine as 'ice' and . . . we have consistently rejected arguments

demanding *direct* evidence of drug identity, quantity, or purity." (citing <u>Whitehead</u>, 487 F.3d at 1071–72)). Finally, <u>Stewart</u> and <u>Whitehead</u>, although dealing with different types of drugs, present the same issue as <u>Walker</u> and this case. Those cases thus control to the extent that they fill any gaps left by our decision in <u>Walker</u>.

## III.

For the reasons set forth above, we find no clear error in the district court's identification of the substance as "ice" methamphetamine. Accordingly, Lugo's sentence is affirmed.

———————————————