# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1462

_____

United States of America

*Plaintiff - Appellee*

v.

Keith A. Graves, also known as Chris Woods

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: February 6, 2017
Filed: May 10, 2017
[Published]

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

PER CURIAM.

After a lengthy trial at which Keith A. Graves represented himself with the help of stand-by counsel, a jury convicted Graves of five counts of sex trafficking by force or coercion and two counts of possession and distribution of methamphetamine. See 18 U.S.C. §§ 1591(a), (b)(1); 21 U.S.C. §§ 841(a)(1), 844(a). The jury acquitted

Graves of four sex trafficking offenses. The district court[1] sentenced him to 405 months in prison. On appeal, represented by stand-by trial counsel, Graves argues he was denied a fair trial when the government produced voluminous discovery in a manner Graves could not effectively access while in pretrial detention and use at trial, and the district court denied his request for a continuance made on the morning his long-delayed trial was scheduled to begin. We affirm.

At his arraignment on a superseding indictment, Graves told the magistrate judge that he wanted to represent himself because appointed counsel, an assistant federal public defender, was "working together" with the prosecutor to violate "my constitutional rights to a speedy trial." On May 18, 2015, the district court held a hearing on counsel's motion to withdraw. The court gave Graves a lengthy warning about the dangers of self-representation; Graves again said he wanted to represent himself. Finding that he was mentally competent and made a knowing and voluntary waiver of his right to counsel, the court allowed him to proceed *pro se* and appointed stand-by counsel.

At this hearing, the court asked if Graves had access to the government's discovery. The prosecutor advised that extensive discovery had been provided on twenty-two disks pursuant to a stipulated discovery order. Graves complained that he did not have access to electronic discovery at the detention facility in Rugby and no access to FBI interview reports. The court directed the U.S. Marshals Service to ensure there was a room with a computer at the Rugby facility where Graves could look at the discovery "more than an hour a day." Graves said, "I'll look at everything every day until I go to trial," and said he would be ready for a mid-July trial.

---

[1]The Honorable Daniel L. Hovland, Chief Judge of the United States District Court for the District of North Dakota.

At a June 23, 2015 status conference, the prosecutor assured the court, "We sent all the discovery out." Graves said he had reviewed eight of the twenty-four CDs and complained that he needed more time to prepare for trial because "I can't get any paper copies of anything at all," and the laptop in Rugby "doesn't really play all the programs." The court explained that it was standard policy not to allow inmates in custody awaiting trial to have paper copies of discovery that could "get in the wrong hands." The court said this is why "most people rely upon an attorney to accumulate that information and conduct the investigation." The court granted Graves a continuance, assured him "we can find another laptop computer, and . . . set aside more time for you to look at those images," granted Graves's belated request for an investigator, and advised Graves to consult with stand-by counsel. On September 15, the court ordered Graves transferred from the jail in Rugby to the Burleigh County Detention Center in Bismarck, where he would be provided a computer with appropriate software to aid in his review of discovery.

At the start of a pretrial conference on September 28, the court noted trial was scheduled for two weeks beginning October 19 and discussed "how this trial is going to proceed." The court instructed Graves to immediately contact stand-by counsel, who would contact the clerk of court, if Graves had problems reviewing discovery. Graves replied, "Well, so far, Your Honor, I haven't been able to review it," and asked how he would be able to separate the information and present it as exhibits. The court instructed the U.S. Marshal to make sure Graves has "full access to a laptop" at the Detention Center and said, if they cannot do it, provide Graves a room at the federal courthouse where he can sit all day and look at discovery. The court advised Graves to work with stand-by counsel to develop trial exhibits. Graves complained he had not been provided an investigator. The court replied, "I never received any letter from you requesting private investigator funds," awarded funds for an investigator, and instructed stand-by counsel to help arrange interviews of persons Graves wanted interviewed. Graves also complained that "some of these

discoveries disks . . . don't even work." The prosecutor explained that, with electronic device discovery, sometimes there is nothing to view.

On October 19, before selecting the jury, the district court gathered counsel and Graves to discuss the preliminary jury instructions. Graves stated he had not reviewed all the discovery, "and basically I'm unprepared to go forward with trial." The court replied: "I had you transported to Bismarck to eliminate all of these problems . . . why didn't you bring these to my attention sometime in the last three weeks? . . . I've made it crystal clear that there would be no further continuances." After lengthy complaints by Graves, the court observed: "according to [Detention Center] records . . . you've only used the computer over there seven hours in the last three weeks. . . . and you haven't contacted me to let me know that you've had any problems whatsoever about the government's evidence and making sure that you've seen it all and contemplated it all." After confirming that the government had complied with its discovery obligations, the court denied Graves a continuance.

The lengthy trial transcript demonstrates that Graves made considerable use of the government's discovery in representing himself at trial, and that the district court liberally allowed him to introduce discovery materials and use them to impeach government witnesses.

On appeal, Graves first argues that he was denied a fair trial because the government did not produce over 6,000 pages of discovery in a timely manner and usable form that gave Graves an opportunity to review discovery, investigate the case, and work with stand-by counsel to subpoena witnesses and prepare exhibits for trial. After careful review of the trial and pretrial record, we disagree. There is no claim the government failed to comply with its disclosure requirements under Rules 16(a)(1)(A), (E), (F), or 26.2 of the Federal Rules of Criminal Procedure.

Rule 16 does not address the form discovery must take, and the "open discovery file" provided by the government in this case allowed Graves access to material that was not required by rule, statute, or the Constitution. Counsel signed a stipulated discovery and protective order early in the case that permitted the government to produce discovery in digital format and denied Graves paper copies while detained. Graves cites no authority requiring the government to produce electronic discovery in a particular fashion. See United States v. Warshak, 631 F.3d 266, 296 (6th Cir. 2010). The district court made great effort to assure that Graves had timely computer access to the discovery. It granted a continuance, moved Graves to a detention facility closer to the courthouse, and instructed the U.S. Marshals Service to ensure the detention center provided Graves adequate computer access, or to provide him a room at the courthouse for that purpose. The record discloses that Graves was provided a pretrial investigator, subpoenaed numerous defense witnesses for trial, and made use of the government's discovery at trial. Finally, and perhaps most importantly, Graves provides no instances where lack of access to specific discovery prejudiced his trial defense. In these circumstances, we conclude the government did not deny Graves his constitutional right to a fair trial, and the district court did not abuse its discretion in responding to his numerous discovery complaints.

Graves next argues the district court abused its discretion in denying his day-of-trial motion for another continuance. We disfavor continuances, particularly on the eve of trial, and will reverse only if the district court abused its broad discretion and the moving party was prejudiced. See United States v. Chahia, 544 F.3d 890, 896 (8th Cir. 2008). Here, the district court granted Graves a lengthy continuance, told him to alert stand-by counsel immediately if the court's efforts to resolve his discovery problems were not working, and warned that no further continuances would be granted. The court also again advised that Graves was unwise to represent himself and said he could turn to his well-prepared stand-by counsel to conduct the trial at any time. Graves then appeared the morning of trial, advised the court of myriad, previously undisclosed discovery complaints that made him unprepared for trial, but

admitted that he had looked at discovery only seven hours the previous three weeks. The court did not abuse its discretion in denying this untimely request. Moreover, Graves has failed to show prejudice, "that, if the continuance had been granted, the result of the trial would have been different." United States v. Hyles, 479 F.3d 958, 968 (8th Cir. 2007).

The judgment of the district court is affirmed.

_____