# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-1696

_____

United States of America

*Plaintiff - Appellee*

v.

Lavelle Harris

*Defendant - Appellant*

_____

No. 21-2353

_____

United States of America

*Plaintiff - Appellee*

v.

Lamar Harris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: February 14, 2022
Filed: June 10, 2022
[Published]

_____

Before SMITH, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

PER CURIAM.

Co-Defendants Lavelle Harris and Lamar Harris (Lavelle and Lamar, respectively) each pleaded guilty to conspiracy to distribute a controlled substance. On appeal, both claim the district court[1] erred at their respective sentencings. We have jurisdiction under 28 U.S.C. § 1291.

## I. Lavelle Harris

### A. Background

Lavelle pleaded guilty to conspiracy to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The Presentence Investigation Report (PSR) assessed a base offense level of 38, with a three-level reduction for acceptance of responsibility, for a total offense level of 35. The PSR also recommended that Lavelle qualified for an enhancement as a career offender pursuant to United States Sentencing Guidelines § 4B1.1(a) based on his two prior Iowa convictions for delivery of a controlled substance. With a total offense level of 35[2] and a criminal history category of VI, the advisory Guidelines range was 292 to 365 months of imprisonment.

Lavelle disputed the quantity and type of methamphetamine attributed to him in the calculation of his base offense level. He argued that he should only be held

---

[1]The Honorable John A. Jarvey, then Chief Judge, United States District Court for the Southern District of Iowa, now retired.

[2]In the PSR, the offense level calculated pursuant to § 2D1.1 based on drug quantity was higher than the offense level calculated pursuant to § 4B1.1, the career offender provision.

responsible for the 242.8 grams of methamphetamine he sold to a confidential informant during a controlled buy and that the government had not shown that the methamphetamine he was selling was "ice."[3] He also objected to his classification as a career offender.

At sentencing, the government presented testimony from one of its investigators, as well as grand jury transcripts from two cooperating witnesses and documents related to Lavelle's two prior controlled substance convictions. The investigator testified that Lavelle told him during an interview that he distributed "1 to 2 pounds" of "ice" methamphetamine to an individual on multiple occasions. In the grand jury testimony, one of the witnesses testified to obtaining approximately four pounds of ice methamphetamine from Lavelle each week over a period of several months.

The district court concluded that "the probation office appropriately began with a base offense level of 38." The court found the grand jury testimony "was sufficiently corroborated, not only through other evidence but through the statements of the defendant." It further noted that the methamphetamine that was tested during the investigation was ice, and that the "drug dealers and users" involved in the case, who "have a remarkable ability to know the difference between ice and methamphetamine mixtures," referred to the methamphetamine being distributed as "ice." Noting that "it only takes 4.5 kilos of ice to get to a level 38," the district court found that a base level of 38 was justified because "there was substantially more than that present here." The court also found that Lavelle qualified as a career offender based on his prior drug convictions, and concluded that his advisory Guidelines range was 292 to 365 months of imprisonment. After both parties were given an opportunity to make final arguments, the court varied downward and sentenced Lavelle to 262 months of imprisonment followed by a five-year term of supervised release. Lavelle timely appealed.

---

[3]"Ice" is defined under the Guidelines as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." USSG § 2D1.1(c) n.(C).

## B. Discussion

Lavelle first argues that the district court erred in classifying him as a career offender. We review the district court's determination that a defendant is a career offender de novo. United States v. Boose, 739 F.3d 1185, 1186 (8th Cir. 2014).

Lavelle contends his Iowa convictions for delivery of a controlled substance under Iowa Code § 124.401(1) do not count as predicate convictions for the career offender enhancement because § 124.401(1) is overbroad. This court considered and rejected this argument in United States v. Boleyn, 929 F.3d 932, 936–37 (8th Cir. 2019). Lavelle challenges Boleyn's reasoning, but this panel is bound by its holding. See United States v. Olness, 9 F.3d 716, 717 (8th Cir. 1993) ("We are bound to follow the decision of another panel, which becomes the law of the circuit. Only the court en banc may overrule an earlier decision and adopt a differing rule of law."). Lavelle's argument is thus foreclosed by Boleyn.

Lavelle next contends the district court erred in finding that he was responsible for distributing more than 4.5 kilograms of ice methamphetamine. Specifically, he argues the government failed to prove he distributed that amount of methamphetamine and failed to prove the distributed methamphetamine was ice. We review the district court's finding of drug quantity and type for clear error. United States v. Lugo, 702 F.3d 1086, 1089 (8th Cir. 2013) (type); United States v. Garcia, 774 F.3d 472, 474 (8th Cir. 2014) (quantity).

In cases where "the amount seized does not reflect the scale of the offense," a sentencing court "shall approximate the quantity of the controlled substance." Garcia, 774 F.3d at 474 (quoting USSG § 2D1.1, cmt. n.5). "[T]he court can determine drug quantity using imprecise evidence, so long as the record reflects a basis for the court's decision." Id. (quoting United States v. Zimmer, 299 F.3d 710, 720 (8th Cir. 2002)). In finding that Lavelle was responsible for more than 4.5 kilograms of ice methamphetamine, the district court relied on sworn testimony from the witnesses and the investigator. Lavelle argues that by submitting the grand jury

testimony in transcript form, the government deprived him of the opportunity to meaningfully contest the witnesses' testimony. But Lavelle did not object to the admission of the grand jury testimony, and we have "repeatedly upheld the consideration of grand jury testimony at sentencing." United States v. Cross, 888 F.3d 985, 993 (8th Cir. 2018). Moreover, as noted by the district court, the testimony was corroborated by other evidence in the record, including Lavelle's own statements to law enforcement.

As to the drug type, "[w]here only a small portion of the methamphetamine recovered during an investigation is tested for purity, the testing evidence combined with the testimony of witnesses who actively participated in the drug conspiracy can amply support a sentencing court's conclusion as to drug type for a quantity of drugs greater than the amount seized." Lugo, 702 F.3d at 1089 (cleaned up) (quotation omitted). Here, the methamphetamine seized from the controlled buy was tested and shown to be ice, and the dealers and users in this case, including Lavelle, referred to the drugs being sold as "ice." See United States v. Walker, 688 F.3d 416, 424 (8th Cir. 2012) (information from users and distributors can be particularly compelling, as they "are among the most knowledgeable experts on such drugs" (quotation omitted)). This evidence is sufficient to support the district court's conclusion that the methamphetamine Lavelle distributed was ice.

The district court's findings regarding drug type and quantity were adequately supported by the record and free of clear error.

## II. Lamar Harris

Lamar pleaded guilty to conspiracy to distribute five grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The PSR assessed a total offense level of 37 and a criminal history category of VI, resulting in a Guidelines range of 292 to 365 months of imprisonment. Lamar initially made several objections to the PSR. One of his objections was to the assignment of three criminal history points for a 2011 conviction for possession with

intent to deliver cocaine. Lamar argued that this conviction was relevant conduct committed during the course of the instant offense, and therefore it should not have been included in the calculation of his criminal history category. See USSG § 4A1.2(a)(1).

At sentencing, however, Lamar withdrew this and his other objections pursuant to an agreement with the government, whereby the government agreed not to pursue an enhancement for possession of a firearm. Based upon the parties' agreement, the district court calculated a lower Guidelines range of 235 to 293 months of imprisonment. Lamar's counsel argued for a downward variance and requested a sentence of 210 months. The court granted the request, sentencing Lamar to 210 months of imprisonment.

Lamar now seeks to renew his argument that his 2011 cocaine conviction should have been classified as relevant conduct and therefore excluded from his criminal history calculation. However, where a defendant abandons and withdraws an objection to the PSR at the time of sentencing in exchange for a benefit, he has waived the objection and is not entitled to appellate review of that issue. United States v. Evenson, 864 F.3d 981, 983–84 (8th Cir. 2017). By asserting this objection and then affirmatively withdrawing it as part of his deal with the government, Lamar "demonstrated the intentional relinquishment or abandonment of his right to argue the point," and we may not consider it on review. Id. at 983 (quotations omitted).

## III.

We affirm the judgment of the district court in both cases.

_____