# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2317

_____

Michael Dowell

*Plaintiff - Appellant*

v.

Lincoln County, Missouri; Christopher Bartlett; Joseph Eagan; Rodney Boyer;
Harry Dilworth; William Carson, all in their individual and official capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 10, 2014
Filed: August 8, 2014

_____

Before RILEY, Chief Judge, BYE and KELLY, Circuit Judges.

_____

BYE, Circuit Judge.

Michael Dowell filed this 42 U.S.C. § 1983 action against Lincoln County, the county detective, and four police officers (collectively "Defendants") for their actions while investigating and prosecuting Dowell for the rape and murder of Stephanie

Hogland. The district court[1] granted partial summary judgment for Defendants, and Dowell dismissed the surviving claim to pursue this appeal. On appeal, Dowell argues the district court erred in granting Defendants summary judgment. We affirm.

I

In 1991, officers of the Lincoln County Police Department found the partially clothed body of Stephanie Hogland in a ditch. Her underwear and vagina contained traces of semen, and bruises marked her body. During Hogland's autopsy, Dr. Mary Case found small lacerations on the genitalia, bruising on the arms and legs indicating grip marks, and determined closed-head trauma as the cause of death. Based on the autopsy findings, Dr. Case determined probable sexual assault and murder. No arrests were made as a result of the initial investigation.

In 2006, Dowell submitted DNA to his probation officer. The sample matched the DNA found on Hogland's underwear. As a result, Lincoln County police reopened the investigation into Hogland's death. The reopened investigation was led by Captain William Carson, Officers Rodney Boyer, Harry Dilworth, and Joseph Eagan, and Detective Christopher Bartlett. The investigation began with Officers Boyer, Dilworth, and Eagan driving an unmarked minivan to Dowell's residence, where Dowell agreed to answer questions at the police station and entered the van with the officers.

Before driving to the station, however, the officers took Dowell to the ditch where Hogland had been found in 1991. En route, the officers showed Dowell pictures of Hogland and asked Dowell if he knew Hogland, which he denied. When they arrived at the ditch, the officers exited the van but Dowell remained inside.

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

Eventually, the officers drove Dowell to the police station. At no time did Dowell request to be returned home.

The officers interrogated Dowell at the police station. Before they questioned Dowell, Officer Boyer read Dowell his <u>Miranda</u> rights and provided water. The beginning of the interrogation proceeded without issue, with Dowell appearing calm and collected until the officers formally arrested him. After arresting Dowell, the officers resumed questioning. A brief heated exchange occurred where Dowell and Officer Dilworth raised their voices. After the exchange, Officer Dilworth left and Dowell resumed his calm demeanor. The interrogation concluded without further incident; Dowell maintained his innocence and continually denied having known Hogland. Near the end of the interrogation, Dowell repeatedly requested an attorney be appointed to him, but continued to engage the officers. Near the conclusion of the interrogation, Officer Boyer commented aloud about Missouri's death penalty law before exiting the room. The officers did not threaten Dowell with physical violence during the interrogation.

Following the interrogation, Detective Bartlett drafted a probable cause statement for the rape and murder of Hogland. The next day, Detective Bartlett and Officer Dilworth visited Dowell in his holding cell. Dowell's attorney was not present. Detective Bartlett read Dowell the charges and told Dowell Missouri planned to seek a death sentence for Hogland's murder. The officers did not ask Dowell any questions and left after reading the charges.

Missouri initially charged Dowell with the murder and rape of Hogland. Missouri law, however, required the rape charge be severed because Missouri sought the death penalty. <u>See</u> Mo. Rev. Stat. § 565.004. Prior to trial, Dowell moved to suppress the statements he made after invoking his right to counsel during the interrogation, and the trial court granted the motion. The case proceeded to trial in 2008. Dr. Case was one of the witnesses who testified. During Dr. Case's testimony,

she conceded the lacerations on Hogland's genitalia could have been caused by forceful but consensual sex. The jury acquitted Dowell of murder, and the trial court dismissed the rape charge without prejudice.

After Dowell's acquittal, Missouri sought to prosecute Dowell for the rape of Hogland. The prosecutor's office asked Detective Bartlett to draft a new probable cause statement charging Dowell with rape. Detective Bartlett drafted the second probable cause statement by relying on the first probable cause statement, removing reference to the murder trial because the prosecutor had advised it was unnecessary. Detective Bartlett listed the lacerations on Hogland's genitalia in his second probable cause statement as supporting the finding of probable sexual assault.[2] Before submitting the statement, Detective Bartlett reviewed with the prosecutor the facts he planned to include, and the prosecutor told him the statement was sufficient. Pursuant to the second probable cause statement, Dowell was arrested and again charged with the rape of Hogland.

Dowell moved to dismiss the rape charge with prejudice, arguing Missouri was collaterally estopped from charging him for rape. The trial court granted the motion, and Dowell was released. Dowell then filed this lawsuit alleging nine claims relating to his arrest, interrogation, and prosecution, and to the hiring, training, and supervision of the officers involved. Defendants argued they were entitled to qualified immunity and moved for summary judgment on all nine of Dowell's claims.

Reasoning there had been no violations of Dowell's Fourth, Fifth, or Sixth Amendment rights, the district court granted Defendants' motion for summary judgment on all but one claim, which Dowell voluntarily dismissed. In determining

---

[2]Detective Bartlett had not attended the murder trial and was not aware Dr. Case had opined the lacerations could have been the result of consensual sex.

summary judgment, the district court relied heavily on Defendants' assertion of a qualified immunity defense. Dowell appeals the grant of summary judgment.

II

Dowell contends the district court erred in granting Defendants summary judgment, arguing he introduced sufficient evidence to raise genuine questions of material fact for each of his claims. Dowell argues (1) the officers compelled him to provide self-incriminating testimony during his interrogation; (2) the officers violated his right to counsel; and (3) he was prosecuted for rape without probable cause.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Crawford v. Van Buren Cnty., Ark., 678 F.3d 666, 669 (8th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view "the evidence in the light most favorable to the non-moving party and [give] that party the benefit of all reasonable inferences." Edwards v. Byrd, 750 F.3d 728, 731 (8th Cir. 2014).

A

We first consider Dowell's claim the officers violated his Fifth Amendment right against self-incrimination. Dowell argues the officers violated this right during the van ride and during the interrogation by compelling him to lie to police about having known Hogland in 1991. When deciding whether statements are voluntary, we consider the totality of the circumstances. Sheets v. Butera, 389 F.3d 772, 778-79 (8th Cir. 2004). A criminal defendant has the burden of showing the officers' conduct went beyond standard police interrogation tactics to the point it overbore the defendant's will. United States v. Sanchez, 614 F.3d 876, 884 (8th Cir. 2010). Involuntary statements are extracted through threats, violence, or promises. Simmons

v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001). A police threat must be credible to cause an involuntary statement. Sanchez, 614 F.3d at 884.

Dowell argues the van ride contributed to the coercive atmosphere of his interrogation because the officers took him to a dark, isolated county road and failed to read him the rights required by Miranda v. Arizona, 384 U.S. 436 (1966). Dowell, however, voluntarily rode with the officers and did not request to be returned home. During the van ride, the officers made no promises or threats to Dowell, and there is no suggestion the officers physically coerced Dowell into saying he did not know Hogland. Accordingly, there is no basis to conclude the statements Dowell made in the van were anything but voluntary. See Simmons, 235 F.3d at 1132-33.

Dowell also asserts the overall atmosphere of the officers' conduct throughout the interrogation physically intimidated and compelled him to make more untruthful statements about not having known Hogland. As part of considering the totality of the circumstances of the interrogation, see Sheets, 389 F.3d at 778-79, we have had the benefit of viewing a videotape of the interrogation which took place at the police station. The videotape shows the officers informed Dowell of his Miranda rights at the beginning of the interrogation. Dowell both signed a Miranda waiver form and acknowledged his understanding of his rights. Dowell's understanding of his Miranda rights is a "particularly compelling fact" in our finding his statements were voluntary. United States v. LeBrun, 363 F.3d 715, 726 (8th Cir. 2004) (internal quotation and citation omitted). Dowell's only allegation of a specific threat or violence is Officer Boyer informing Dowell Missouri is a death penalty state. An officer, however, may make a truthful statement regarding a possible punishment without it overbearing a defendant's will. Simmons, 235 F.3d at 1133.

Dowell contends the officers created an atmosphere of intimidation when (1) Officer Boyer briefly stood over him and then brushed past Dowell, and (2) Dowell had his back against the wall as Officer Dilworth yelled at him. However, an officer

-6-

may stand in close proximity to a suspect without the closeness of the officer intimidating a suspect. See id. at 1132. We find nothing to indicate Officer Boyer momentarily standing over and then brushing past Dowell overbore Dowell's will. In addition, raised voices alone do not rise to the level of overbearing a defendant's will. See id. at 1133 ("Tactics such as deception and raised voices do not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne."). Based on the foregoing, we hold Dowell failed to introduce sufficient evidence to raise a question of material fact as to whether the officers' conduct overbore Dowell's will.[3]

B

Dowell next contends the district court erred by granting Defendants summary judgment on his Sixth Amendment claim. Dowell alleges the officers violated his right to counsel by reading Dowell his charges at the jail without counsel present in an attempt to elicit a confession. The district court concluded Defendants were entitled to qualified immunity. "Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We apply a two-part test to determine whether a defendant is entitled to qualified immunity: (1) whether the plaintiff can "make out a violation of a constitutional or statutory right," and (2) "whether that right was clearly established at the time of the defendant's alleged misconduct." LaCross, 713 F.3d at 1158.

---

[3]Dowell's failure to intercede claim depends on finding the officers compelled Dowell's statements. Because we conclude the statements were not compelled, we affirm the district court's grant of summary judgment to Defendants on that claim.

In 2006, the time of the alleged violation, <u>Massiah v. United States</u>, 377 U.S. 201, 206 (1964), was controlling law. <u>Massiah</u> established a constitutional violation of a defendant's right to counsel occurred *only* when the improperly obtained evidence was "used against [the defendant] at his trial." <u>United States v. Chahia</u>, 544 F.3d 890, 899 (8th Cir. 2008) (citing <u>Massiah</u>, 377 U.S. at 206).[4] As no statements made by Dowell without counsel present were introduced at trial, Dowell failed to allege a violation of the right to counsel. Accordingly, the district court did not err in granting Defendants summary judgment on Dowell's Sixth Amendment claim.

C

Dowell next contends the district court erred by granting Defendants summary judgment on his Fourth Amendment claim. Dowell alleges Detective Bartlett violated this right by filing a probable cause statement which did not indicate Dowell had been acquitted of Hogland's murder or that the coroner had opined the lacerations on Hogland's genitalia could have been produced by consensual sex. "It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." <u>Small v. McCrystal</u>, 708 F.3d 997, 1003 (8th Cir. 2013) (internal quotation and citation omitted). To challenge probable cause, a plaintiff must show (1) police deliberately or recklessly included a false statement, or omitted a truthful statement from the affidavit; and (2) "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." <u>United States v. Mashek</u>, 606 F.3d 922, 928 (8th Cir. 2010) (internal citation and quotation omitted). An officer is entitled to qualified immunity if he had "merely *arguable* probable cause," which is a mistaken but objectively

---

[4]We note the law on this issue has changed since 2006. <u>Kansas v. Ventris</u>, 556 U.S. 586, 592 (2009), expanded <u>Massiah</u> and "conclude[d] that the <u>Massiah</u> right is a right to be free of uncounseled interrogation, and is infringed *at the time of the interrogation*" (emphasis added).

reasonable belief the suspect committed a criminal offense. McCabe v. Parker, 608 F.3d 1068, 1078 (8th Cir. 2010).

It is undisputed Detective Bartlett's second probable cause statement did not contain references to Dowell's acquittal or Dr. Case's expanded trial testimony indicating consensual sex could have caused the lacerations on Hogland's genitalia. We therefore determine whether Detective Bartlett's probable cause statement would still establish probable cause if the information had been included. "The determination of probable cause is made after considering the totality of the circumstances." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007).

Looking to the totality of the circumstances, Detective Bartlett's second probable cause statement would still have established probable cause if the omitted facts had been included. The facts contained in the second probable cause statement included (1) Hogland's partially clothed body; (2) bruising on the arms and hands indicating the assailant forcefully held Hogland; (3) numerous lacerations to the head and face along with closed-head trauma as cause of death; and (4) semen found on Hogland's underwear matching Dowell's DNA sample. We find these facts to warrant reasonable grounds for believing Dowell had raped Hogland. See Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (describing probable cause standard). Neither Dowell's acquittal of the murder charge nor Dr. Case's trial testimony eliminated the possibility Dowell had raped Hogland. First, the only issue at the murder trial for the jury to decide was whether Dowell had caused Hogland's death. Second, Dr. Case merely opined it was *possible* the lacerations resulted from consensual sex.

Therefore, we find Dowell failed to raise any genuine issues of material fact and conclude summary judgment is proper on Dowell's Fourth Amendment claim.[5]

III

Accordingly, we affirm the judgment of the district court.

_____

---

[5]Dowell raises three additional claims arising from the alleged Fourth Amendment violation: (1) Lincoln County failed to instruct, supervise, and discipline its employees, (2) Dowell was falsely arrested and imprisoned, and (3) Detective Bartlett maliciously initiated prosecution against Dowell. Each depend on a finding there had been no probable cause to prosecute Dowell for the rape. Because we conclude Detective Bartlett's probable cause statement would provide probable cause even if the omitted references had been included, the district court did not err by granting summary judgment to Defendants on those claims.