# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2834

_____

Kendrick C. Story,

*Plaintiff - Appellant*,

v.

Maxcie Foote, Major, Randall Williams Unit, ADC; John Lowe, Deputy Warden,
Randall Williams Unit, ADC; Larry May, Chief Deputy Director, Randall
Williams Unit, ADC; John Herrington, Captain, Randall Williams Unit, ADC,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 11, 2014
Filed: April 9, 2015

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Kendrick C. Story, an African-American inmate in Arkansas, sued four
correctional officers pursuant to 42 U.S.C. § 1983, alleging that they violated his
constitutional rights and seeking damages. Story's pro se complaint and amended
complaint focus on a visual body-cavity search that one or more officers allegedly

conducted of Story's person on April 16, 2013. The search occurred after Story returned to the Williams Correctional Facility from the Pine Bluff unit school. The district court,[1] screening the complaints before service of process pursuant to 28 U.S.C. § 1915A, dismissed them without prejudice for failure to state a claim. Story appealed, and this court requested a response from the correctional officers concerning Story's claims under the Fourth Amendment. We review the dismissal *de novo* and affirm.

To state a claim, Story's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Correctional officers are entitled to qualified immunity unless they violated clearly established rights of the inmate of which a reasonable person would have known, *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and we may consider the defense of qualified immunity in reviewing the district court's preservice dismissal. *See* 28 U.S.C. § 1915A(b)(2); *Maness v. Dist. Court, Logan Cnty.-N. Div.*, 495 F.3d 943, 944-45 (8th Cir. 2007); *Burlison v. United States*, 627 F.2d 119, 122 (8th Cir. 1980). Although the district court dismissed the complaints for failure to state a claim without addressing qualified immunity, we may affirm on any ground supported by the record. *Jacobson v. McCormick*, 763 F.3d 914, 916-17 (8th Cir. 2014); *Graves v. City of Coeur d'Alene*, 339 F.3d 828, 845 n.23 (9th Cir. 2003). It is unnecessary and inefficient to address whether Story adequately pleaded a constitutional violation, *see Pearson*, 555 U.S. at 236-37, if the defense of qualified immunity is established on the face of the complaint.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or

---

[1]The Honorable D. Price Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (internal quotation marks omitted). To overcome qualified immunity, a plaintiff must be able to prove that "every reasonable official would have understood that what he is doing violates" a constitutional right, *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks omitted), and that the constitutional question was "beyond debate." *Id.*; *see also Lane v. Franks*, 134 S. Ct. 2369, 2383 (2014); *Stanton*, 134 S. Ct. at 7.

Story's lead point on appeal is that he stated a claim that the defendants violated his Fourth Amendment rights by conducting a visual body-cavity search of his person. According to the complaint and materials attached thereto, Story returned on the date in question to the Williams Correctional Facility from the Pine Bluff unit school. When he arrived at the gate, he was met by Captain John Herrington and Major Maxcie Foote. Story alleges that officers told him to remove his clothes, to lift his genitals, and to bend over and spread his buttocks to facilitate a visual body-cavity search. He claims that the search took place in front of other inmates and in view of two security cameras. He complains that one or more female correctional officers observed the search through a video feed from the cameras in the master control room.

The Supreme Court never has resolved whether convicted inmates retain a Fourth Amendment right against unreasonable searches while in custody. The Court in *Bell v. Wolfish*, 441 U.S. 520 (1979), assumed the point for the sake of analysis. *Id.* at 557. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Court held that the Fourth Amendment did not apply to a search of a prison cell, reasoning that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-28. The Seventh Circuit, in the wake of *Hudson*, ruled that inmates retain no right under the Fourth Amendment against visual inspections by prison guards. *Johnson v. Phelan*, 69 F.3d 144, 146-47

-3-

(7th Cir. 1995). This court, however, has said that "prison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies," *Levine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008), and allowed a Fourth Amendment claim challenging strip searches to proceed in *Seltzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995). The Arkansas Supreme Court, as best we can tell, has never addressed the question. The Supreme Court recently has reserved judgment twice on the question whether decisions of a federal court of appeals are a source of clearly established law for purposes of qualified immunity analysis. *See Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (per curiam); *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). Following the approach of the Court in those cases, we assume for the sake of analysis that our decisions clearly establish that a convicted inmate has rights under the Fourth Amendment against unreasonable searches of his body.

Whether Story's allegations state a claim that correctional officers violated his clearly established rights under the Fourth Amendment must be considered in light of prior decisions in this area. In *Wolfish*, the Supreme Court ruled that visual body-cavity inspections of inmates at a federal custodial facility—conducted after every contact visit with a person from outside the institution—were not unreasonable. 441 U.S. at 558 & n.39. In *Goff v. Nix*, 803 F.2d 358 (8th Cir. 1986), this court held that it was reasonable for officials to conduct visual body-cavity searches of inmates at a state penitentiary whenever an inmate left or entered the institution. *Id*. at 364-67. Most recently, in *Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S. Ct. 1510 (2012), the Court ruled that correctional officers must be allowed to conduct an effective search of detainees—even those held for minor offenses—before they are admitted to a general jail population, and that "this will require at least some detainees to lift their genitals or cough in a squatting position." *Id*. at 1520.

These decisions, while acknowledging the privacy concerns of inmates, emphasize that detention facilities are "fraught with serious security dangers," *Wolfish*, 441 U.S. at 559, and that correctional institutions have a strong interest in

preventing and deterring the smuggling of money, drugs, weapons, and other contraband. *Florence*, 132 S. Ct. at 1516-17; *Wolfish*, 441 U.S. at 559; *Goff*, 803 F.2d at 364-65. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Wolfish*, 441 U.S. at 546.

Here, Story alleges that officers conducted a visual body-cavity inspection when Story returned to the Williams facility from outside the institution. Given what the Supreme Court and this court have said about the strong institutional interests in maintaining security, and about the reasonableness of visual body-cavity inspections when detainees enter a facility, Story's allegation of a body-cavity search by itself does not state a claim for the violation of a clearly established right.

Story argues, however, that the manner in which this particular search was conducted violated the Fourth Amendment. He highlights an allegation that a female correctional officer was working in the master control room at the time of the search, and that she viewed the search on a video screen. He cites this court's statement—in a case about a strip search of an arrestee in a motel room—that "strip searches should be conducted by officials of the same sex as the individual to be searched." *Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1008 (8th Cir. 2007).

The search in this case, consistent with *Richmond*'s general admonition, was conducted by male correctional officers. Story does not allege that the male officers knew that female officers would observe the video feed from the master control unit. In any event, the male officers did not violate Story's clearly established rights by conducting the inspection in a location where a female officer also may have viewed the search from the master control room through a video feed from a security camera. This court in *Timm v. Gunter*, 917 F.2d 1093 (8th Cir. 1990), held that prison administrators did not violate the Fourth Amendment rights of inmates by allowing

-5-

intermittent visual surveillance of male inmates by female guards while the inmates used showers and bathrooms or slept without clothing in their cells. Our opinion cited the "rational connection between sex-neutral visual surveillance of inmates and the goal of prison security," and observed that staffing adjustments (akin to removing female officers from the master control room during searches in this case) would interfere with equal employment opportunities for women and require significant expenditures by the prison. *Id*. at 1102. We also have held that the use of cameras to monitor activities from a control booth is reasonable, even when body-cavity searches are involved. *Franklin v. Lockhart*, 883 F.2d 654, 656 (8th Cir. 1989). In light of these precedents, it was not beyond debate that a reasonable correctional officer was forbidden to proceed with a visual body-cavity search in an area monitored by security cameras while a female officer was assigned to the master control unit.

Story also complains that officers conducted the search in the presence of other inmates. As a general proposition, the Fourth Amendment requires a balancing of the need for a particular search against the invasion of personal rights involved. *Wolfish*, 441 U.S. at 558. In *Franklin*, however, this court held reasonable a practice of conducting visual body-cavity searches within view of five inmates, at least where the record did not support a finding that a less public means of searching was consistent with institutional security. 883 F.2d at 656-57. The Ninth Circuit similarly upheld body-cavity searches conducted in a "sally port" area that was visible to other inmates and to female officers working in a "control bubble," at least where there were no ready alternatives that would enhance privacy without compromising security or increasing cost. *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988).

Story does not allege that a more private, yet equally secure and cost-effective means of conducting the body-cavity inspection was readily available to the officers. The Supreme Court, moreover, has not clearly established that the presence of other inmates renders a body-cavity search unreasonable. Story cites no circuit precedent

that has established the proposition; an unpublished and non-precedential decision concerning strip searches in a prison yard, *Mills v. White*, 364 F. App'x 308, 309 (8th Cir. 2010) (per curiam), is insufficient to make the asserted right clear. *See Blazek v. City of Iowa City*, 761 F.3d 920, 925 n.3 (8th Cir. 2014). Generally speaking, "[t]he Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct." *Richmond*, 490 F.3d at 1009 (internal quotation marks omitted). We therefore conclude that the alleged presence of other inmates during Story's search does not state a claim for the violation of clearly established rights.

Story next contends that Foote unreasonably conducted the search when he called Story a "monkey" after Story was unable to bend over as far as Foote wanted Story to bend. To be sure, body-cavity searches should not be performed "in a degrading, humiliating or abusive fashion." *Id*. Abusive conduct by searching officers—such as "insultingly suggestive remarks or banal but terrifying expressions of aggression," *U.S. ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 147 (S.D.N.Y. 1977)—cannot be condoned. *Wolfish*, 441 U.S. at 560. We cannot say, however, that Foote's single alleged use of the term "monkey," even with its potential racial overtones, is sufficient to allege the violation of a *clearly established* right under the Fourth Amendment. Story cites no supporting case with analogous facts, and recent decisions rejecting Fourth Amendment claims based on verbal abuse alone militate against a conclusion that the alleged unlawfulness of Foote's manner of searching was beyond debate. *See Dawson v. Anderson County, Tex.*, 566 F. App'x 369, 371 (5th Cir. 2014) (holding that "verbal abuse by a jailer alone" did not give rise to a Fourth Amendment claim for unreasonable strip search); *Gettridge v. Jackson Parish Corr. Ctr.*, No. 3:12-cv-3148, 2013 WL 1180919, at *3 (W.D. La. Feb. 19, 2013) (holding that claims of "verbal abuse or ridicule" during a strip search are not actionable under § 1983); *cf. Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) ("Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination unless it is

pervasive or severe enough to amount to racial harassment.") (internal quotation marks omitted).

For these reasons, we conclude that Story has not alleged sufficient facts to support a plausible claim that the visual body-cavity inspection conducted of his person on April 16, 2013, violated his clearly established constitutional rights. The officers were not on clear notice that the aspects of the search to which Story objects—examined individually or taken together—contravened the Fourth Amendment.

We have considered Story's other claims alleging violations of the Eighth Amendment and the Fourteenth Amendment, and we conclude that they were properly dismissed, substantially for the reasons given by the district court. *See* 8th Cir. R. 47B.

The judgment of the district court is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

I disagree the Fourth Amendment strip-search claim was properly dismissed pre-service. Instead, I believe the district court erred in failing to conduct a balancing test before dismissing Story's Fourth Amendment claim. Additionally, I would not find the correctional officers entitled to qualified immunity.

I

I agree correctional officers are given deference on search policies absent evidence demonstrating their response is exaggerated. Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1517 (2012). However, a strip search in a prison context triggers the need for a district court to engage in a

balancing test. In Goff v. Nix, 803 F.2d 358, 363-65 (8th Cir. 1986), this court noted a prison inmate has a far lower expectation of privacy than do most other individuals in society, but strip searches are "intrusive and unpleasant." This Court considers Fourth Amendment challenges to a prison's strip-search policy under Bell v. Wolfish, 441 U.S. 520, 529 (1979), which requires a balancing test where the need for searches is weighed against invasions of personal rights to determine reasonableness of searches. Goff, 803 F.2d at 363-65.

The district court did not conduct a balancing test, and I am unable to conclude from the complaint the search was reasonable under the Fourth Amendment as a matter of law. Despite broad rights of correctional officers to search prisoners, there are limits on when strip searches are appropriate. See, e.g., Beaulieu v. Ludeman, 690 F.3d 1017, 1029-30 (8th Cir. 2012) (holding courts may consider availability of simple, safe, and less invasive techniques when determining if strip search was reasonable); Serna v. Goodno, 567 F.3d 944, 954 (8th Cir. 2009) (finding relevant that the search was conducted in a private bathroom where only those involved could observe); Richmond v. City of Brooklyn Ctr., 490 F.3d 1002, 1008-09 (8th Cir. 2007) (holding strip searches should be conducted as far from public view as possible without compromising legitimate security concerns, and should be done hygienically and not in a degrading, humiliating, or abusive fashion); Goff, 803 F.2d at 363-65 (holding justification for strip search must be based upon concrete information and not merely perceived security concerns).

In the present case, the complaint alleges troubling facts which require the district court to conduct a balancing test. See Goff, 803 F.2d at 363-65. In determining the reasonableness of the strip search of Story, the need for a strip search must be weighed against the invasion of Story's personal rights. Story alleges the method of the strip search invaded his personal rights, including that Story was strip searched in front of other inmates and one or more female guards were watching a live-streamed video of the search in the control room. I agree the remainder of Story's

-9-

claims do not have constitutional significance on their own, but I believe those claims may be relevant to the reasonableness of the strip search. In particular, Story alleges unsanitary conditions and racial harassment were utilized in the strip search, thus raising concerns this particular strip search was in violation of Story's personal rights. See Richmond, 490 F.3d at 1009 ("[S]trip searches should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion.").

In light of these allegations, and without any record of what security concerns were at issue, the record here is not sufficiently developed to conclude, as a matter of law, the strip search of Story was reasonable. Story's complaint alleges he was returning from a prison school located at the Pine Bluff Unit. Although the majority focuses on Story's return to the Williams Unit "from outside the institution," the record does not establish Pine Bluff Unit which contains the school is an off-campus non-secure facility or there are legitimate concerns of safety when inmates travel between the Williams Unit and the Pine Bluff Unit. If Story was, in fact, returning to his housing unit from a secure school facility the balancing test may well determine a strip search conducted in this manner was unreasonable. Accordingly, I would reverse the pre-service dismissal of the Fourth Amendment strip-search claim, and remand for the district court to conduct the proper balancing test.

II

I also disagree this court should rule in favor of the correctional officers based on qualified immunity. The majority finds the law was not clearly established at the time of the strip search, and the officers are entitled to qualified immunity.

The majority *sua sponte* raises qualified immunity, "an affirmative defense that must be pleaded by a defendant official." Harlow v. Fitzgerald, 457 U.S. 800, 815, (1982). The majority correctly notes an exception to the general pleading requirements exists in § 1915 screening cases where defendant officials have not been

-10-

served or had a chance to respond. See Maness v. Dist. Court, Logan Cnty.-N. Div., 495 F.3d 943, 944-45 (8th Cir. 2007). In the instant matter, the district court did not discuss qualified immunity and the correctional officers do not raise qualified immunity on appeal. The majority does not cite, and I have been unable to find, any cases where the Eighth Circuit *sua sponte* raised the affirmative defense of qualified immunity after the district court dismissed without mention of qualified immunity and the defendants failed to brief a qualified immunity defense on appeal.

For example, in Maness, the magistrate judge recommended dismissal for one defendant based upon qualified immunity and the district court adopted the report and recommendation. Maness v. Dist. Court of Logan Cnty., N. Div., No. 05-2114, Docs. 4, 8 (W.D. Ark. Nov. 30, 2005). On appeal, this court affirmed the district court's dismissal for that defendant based on qualified immunity. Maness, 495 F.3d at 944-45. In Burlison v. United States, 627 F.2d 119 (8th Cir. 1980), the parties briefed the immunity defense before the Eighth Circuit. Id. at 122. It appears the majority's *sua sponte* qualified immunity ruling in this case is unique. Unlike before the district court, where the correctional officers had not been served or had an opportunity to respond, on appeal the correctional officers had the opportunity to brief any affirmative defenses they wished to raise. The correctional officers chose not to raise a qualified immunity defense. Generally, "a party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir. 1993) (internal quotation marks omitted); see also Fenney v. Dakota, Minn. & E. R. Co., 327 F.3d 707, 713 n.7 (8th Cir. 2003) ("[C]laims not raised on appeal are waived[.]" (citing Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001))). While we have discretion to consider issues not raised in the briefs, this is not the type of case where "substantial public interests" weigh in favor of reaching an unraised issue. Cont'l Ins. Cos. v. Ne. Pharm. & Chem. Co., 842 F.2d

977, 984 (8th Cir. 1988). Accordingly, I do not believe it is appropriate for this Court to *sua sponte* raise this defense on the correctional officers' behalf.[2]

Even if a qualified immunity defense were properly before this court, I would not find defendants entitled to qualified immunity at this time. Dismissal based on an affirmative defense is appropriate only where "the defense is established on the face of the complaint." Burlison, 627 F.2d at 122; cf. Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995) ("Because qualified immunity is an affirmative defense . . . it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."). "We apply a two-part test to determine whether a defendant is entitled to qualified immunity: (1) whether the plaintiff can make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Dowell v. Lincoln Cnty., Mo., 762 F.3d 770, 777 (8th Cir. 2014) (internal quotation marks omitted). In my view, the face of the complaint does not support a judgment for the correctional officers on either prong of a qualified immunity defense.

First, for the reasons discussed above, the face of the complaint does not establish that no constitutional violation occurred. A correctional officer's power to strip search an inmate may be broad, but it is not unfettered. See Franklin v. Lockhart, 769 F.2d 509, 510 (8th Cir. 1985) (reversing summary judgment entered against an inmate who alleged violations of his Fourth Amendment rights based on twice a day strip searches). Second, a reasonable correctional officer would have known an overly-intrusive and unnecessary strip search was unconstitutional at the time Story was strip searched. It was clearly established law that unreasonable strip searches violate the Fourth Amendment. Bell, 441 U.S. at 558. Perhaps after the

---

[2]To be clear, I do not believe the correctional officers have waived their right to raise a qualified immunity defense in the future. If service were to occur, the correctional officers could bring a motion for summary judgment and raise the defense of qualified immunity.

-12-

completion of discovery and briefing by the parties, it will be appropriate to find the correctional officers entitled to qualified immunity against Story's claims; however, the time for such a finding is not now.

III

Accordingly, I would reverse the pre-service dismissal of the Fourth Amendment strip-search claim, and remand for the district court to conduct the proper balancing test. In all other respects, I would affirm.

_____