BYE, Circuit Judge,
concurring in part and dissenting in part.
I disagree the Fourth Amendment strip-search claim was properly dismissed preservice. Instead, I believe the district court erred in failing to conduct a balancing test before dismissing Story’s Fourth Amendment claim. Additionally, I would not find the correctional officers entitled to qualified immunity.
I
I agree correctional officers are given deference on search policies absent evidence demonstrating their response is exaggerated. Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, — U.S. -, 132 S.Ct. 1510, 1517, 182 L.Ed.2d 566 (2012). However, a strip search in a prison context triggers the need for a district court to engage in a balancing test. In Goff v. Nix, 803 F.2d 358, 363-65 (8th Cir.1986), this court noted a prison inmate has a far lower expectation of privacy than do most other individuals in society, but strip searches are “intrusive and unpleasant.” This Court considers Fourth Amendment challenges to a prison’s strip-search policy under Bell v. Wolfish, 441 U.S. 520, 529, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), which requires a balancing test where the need for searches is weighed against invasions of personal rights to determine reasonableness of searches. Goff, 803 F.2d at 363-65.
*974 The district court did not conduct a balancing test, and I am unable to conclude from the complaint the search was reasonable under the Fourth Amendment as a matter of law. Despite broad rights of correctional officers to search prisoners, there are limits on when strip searches are appropriate. See, e.g., Beaulieu v. Ludeman, 690 F.3d 1017, 1029-30 (8th Cir.2012) (holding courts may consider availability of simple, safe, and less invasive techniques when determining if strip search was reasonable); Serna v. Goodno, 567 F.3d 944, 954 (8th Cir.2009) (finding relevant that the search was conducted in a private bathroom where only those involved could observe); Richmond v. City of Brooklyn Ctr., 490 F.3d 1002, 1008-09 (8th Cir.2007) (holding strip searches should be conducted as far from public view as possible without compromising legitimate security concerns, and should be done hygienically and not in a degrading, humiliating, or abusive fashion); Goff, 803 F.2d at 363-65 (holding justification for strip search must be based upon concrete information and not merely perceived security concerns).
In the present case, the complaint alleges troubling facts which require the district court to conduct a balancing test. See Goff, 803 F.2d at 363-65. In determining the reasonableness of the strip search of Story, the need for a strip search must be weighed against the invasion of Story’s personal rights. Story alleges the method of the strip search invaded his personal rights, including that Story was strip searched in front of other inmates and one or more female guards were watching a live-streamed video of the search in the control room. I agree the remainder of Story’s claims do not have constitutional significance on their own, but I believe those claims may be relevant to the reasonableness of the strip search. In particular, Story alleges unsanitary conditions and racial harassment were utilized in the strip search, thus raising concerns this particular strip search was in violation of Story’s personal rights. See Richmond, 490 F.3d at 1009 (“[S]trip searches should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion.”).
In light of these allegations, and without any record of what security concerns were at issue, the record here is not sufficiently developed to conclude, as a matter of law, the strip search of Story was reasonable. Story’s complaint alleges he was returning from a prison school located at the Pine Bluff Unit. Although the majority focuses on Story’s return to the Williams Unit “from outside the institution,” the record does not establish Pine Bluff Unit which contains the school is an off-campus non-secure facility or there are legitimate concerns of safety when inmates travel between the Williams Unit and the Pine Bluff Unit. If Story was, in fact, returning to his housing unit from a secure school facility the balancing test may well determine a strip search conducted in this manner was unreasonable. Accordingly, I would reverse the pre-service dismissal of the Fourth Amendment strip-search claim, and remand for the district court to conduct the proper balancing test.
II
I also disagree this court should rule in favor of the correctional officers based on qualified immunity. The majority finds the law was not clearly established at the time of the strip search, and the officers are entitled to qualified immunity.
The majority sua sponte raises qualified immunity, “an affirmative defense that must be pleaded by a defendant official.” Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The majority correctly notes an exception *975 to the general pleading requirements exists in § 1915 screening cases where defendant officials have not been served or had a chance to respond. See Maness v. Dist. Court, Logan Cnty.-N. Div., 495 F.3d 943, 944-45 (8th Cir.2007). In the instant matter, the district court did not discuss qualified immunity and the correctional officers do not raise qualified immunity on appeal. The majority does not cite, and I have been unable to find, any cases where the Eighth Circuit sua sponte raised the affirmative defense of qualified immunity after the district court dismissed without mention of qualified immunity and the defendants failed to brief a qualified immunity defense on appeal.
For example, in Maness, the magistrate judge recommended dismissal for one defendant based upon qualified immunity and the district court adopted the report and recommendation. Maness v. Dist. Court of Logan Cnty., N. Div., No. 05-2114, Docs. 4, 8 (W.D.Ark. Nov. 30, 2005). On appeal, this court affirmed the district court’s dismissal for that defendant based on qualified immunity. Maness, 495 F.3d at 944-45. In Burlison v. United States, 627 F.2d 119 (8th Cir.1980), the parties briefed the immunity defense before the Eighth Circuit. Id. at 122. It appears the majority’s sua sponte qualified immunity ruling in this case is unique. Unlike before the district court, where the correctional officers had not been served or had an opportunity to respond, on appeal the correctional officers had the opportunity to brief any affirmative defenses they wished to raise. The correctional officers chose not to raise a qualified immunity defense. Generally, “a party’s failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.” Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir.1993) (internal quotation marks omitted); see also Fenney v. Dakota, Minn. & E.R. Co., 327 F.3d 707, 713 n. 7 (8th Cir.2003) (“[Cjlaims not raised on appeal are waived[.]” (citing Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001))). While we have discretion to consider issues not raised in the briefs, this is not the type of case where, “substantial public interests” weigh in favor of reaching an unraised issue. Cont’l Ins. Cos. v. Ne. Pharm. & Chem. Co., 842 F.2d 977, 984 (8th Cir.1988). Accordingly, I do not believe it is appropriate for this Court to sua sponte raise this defense on the correctional officers’ behalf.[2]
Even if a qualified immunity defense were properly before this court, I would not find defendants entitled to qualified immunity at this time. Dismissal based on an affirmative defense is appropriate only where “the defense is established on the face of the complaint.” Burlison, 627 F.2d at 122; cf. Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir.1995) (“Because qualified immunity is an affirmative defense ... it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.”). “We apply a two-part test to determine whether a defendant is entitled to qualified immunity: (1) whether the plaintiff can make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant’s alleged misconduct.” Dowell v. Lincoln Cnty., Mo., 762 F.3d 770, 777 (8th Cir. 2014) (internal quotation marks omitted). In my view, the face of the complaint does not support a judgment for the eorrection *976 al officers on either prong of a qualified immunity defense.
First, for the reasons discussed above, the face of the complaint does not establish that no constitutional violation occurred. A correctional officer’s power to strip search an inmate may be broad, but it is not unfettered. See Franklin v. Lockhart, 769 F.2d 509, 510 (8th Cir.1985) (reversing summary judgment entered against an inmate who alleged violations of his Fourth Amendment rights based on twice a day strip searches). Second, a reasonable correctional officer would have known an overly-intrusive and unnecessary strip search was unconstitutional at the time Story was strip searched. It was clearly established law that unreasonable strip searches violate the Fourth Amendment. Bell, 441 U.S. at 558, 99 S.Ct. 1861. Perhaps after the completion of discovery and briefing by the parties, it will be appropriate to find the correctional officers entitled to qualified immunity against Story’s claims; however, the time for such a finding is not now.
Ill
Accordingly, I would reverse the preservice dismissal of the Fourth Amendment strip-search claim, and remand for the district court to conduct the proper balancing test. In all other respects, I would affirm.

. To be clear, I do not believe the correctional officers have waived their right to raise a qualified immunity defense in the future. If service were to occur, the correctional officers could bring a motion for summary judgment and raise the defense of qualified immunity.